IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOIRE M. BRUIN,<br><br>    Plaintiff,<br><br>  v.<br><br>MILLS COLLEGE, MILLS COLLEGE BOARD OF TRUSTEES, JANET HOLMGREN, in her individual and official capacities, JOANNA IWATA, in her individual and official capacities, ELIZABETH BURWELL, in her individual and official capacities, and DOES 1 through 25,<br><br>    Defendants.<br>                                            / | No. C 06-05209 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

**INTRODUCTION**

In this employment-discrimination and wrongful-discharge action, defendants move (1) to dismiss plaintiff's eighth claim with respect to defendants Janet Holmgren, Joanna Iwata and Elizabeth Burwell, and (2) to dismiss plaintiff's ninth and tenth claims as to all defendants. For the reasons stated below, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

As alleged in the second amended complaint, plaintiff Moire Bruin was an employee of defendant Mills College from June 24, 1998, to March 17, 2006. Plaintiff served in various capacities for Mills, including Assistant Director of Residential Life/Residence Director,

1  Assistant and Associate Dean of Students, Director of Residential and Community Life,
2  co-head of the Office of Student Life and Judicial Affairs Coordinator.  Plaintiff alleges that she
3  was an ideal candidate for her positions and was consistently praised and promoted for her great
4  job performance (Compl. ¶¶ 14, 15, 17-20).  As a Hispanic female, she was "an outspoken
5  advocate on issues related to race, gender and disability-based discrimination on campus"
6  (Compl. ¶¶ 4, 23).  Plaintiff alleges that her advocacy in these areas and her criticism of Mills'
7  policies in part led to her being "constructively discharged" (Compl. ¶¶ 4, 27, 28, 31).

8  Beginning around April 2005, plaintiff claims that her criticism of Mills' "ineffectual
9  and weak sexual harassment policy and procedure" and "frequent violations of health and safety
10 standards" created some tension between her and other school officials (Compl. ¶¶ 27, 28, 31).
11 Some school officials, including defendant Elizabeth Burwell, expressed displeasure at
12 plaintiff's advocacy and felt that she should be fired for her actions (Compl. ¶ 31).
13 When plaintiff told her supervisor, defendant Joanna Iwata, that she was pregnant and planned
14 to take a maternity leave, Iwata allegedly threatened plaintiff with a demotion if she took as
15 much maternity-leave time as the law permits (Compl. ¶ 34).  Allegedly, Iwata continued to
16 harass plaintiff about the maternity leave, repeatedly demanding to know just how much time
17 plaintiff would be out of work (Compl. ¶ 33).  Defendant Iwata then took away some of her
18 housing benefits, put her on probation and demoted plaintiff to "a position below her entry level
19 position" based on false accusations against plaintiff (Compl. ¶ 35).  Plaintiff was very
20 surprised by these accusations and claims they were complete fabrications, not supported by her
21 "flawless" record (Compl. ¶ 36).  As a result of Iwata's actions, plaintiff claims that she
22 suffered subsequent "extreme emotional distress" and potentially harmful contractions, which
23 endangered her unborn child (Compl. ¶ 36).  Despite these health issues, plaintiff delivered a
24 healthy baby on December 6, 2005, and remained out on maternity leave until March 17, 2006
25 (Compl. ¶¶ 38, 39).  Instead of returning to work, plaintiff notified Mills that she was compelled
26 to resign because she felt they had "constructively discharged" her (Compl. ¶ 4).
27 Plaintiff resigned March 17, 2006 (Compl. ¶ 39).
28

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. A district court determines whether the facts alleged, if true, would entitle plaintiff to some form of relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). "Dismissal can be based on [either] the lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Well-pled allegations in a complaint must be treated as true, and all reasonable inferences drawn in its favor. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). A plaintiff need only make "a short and plain statement of the claim," thus giving the defendant fair notice of the claim and of the grounds upon which it rests. *Conley*, 355 U.S. at 47 (quoting FRCP 8(a)(2)). Conclusory allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

    **1.**    **EIGHTH CLAIM AS TO INDIVIDUAL DEFENDANTS.**

Defendants move to dismiss plaintiff's eighth claim as to all individual defendants. For the following reasons, defendants' motion to dismiss the eighth claim as to all individual defendants is **DENIED**.

    **A.**    **Employment Discrimination Claim Under 42 U.S.C. 1981 Against Individual Supervisors.**

Defendants argue that the Ninth Circuit has not expressly authorized an employee to sue a non-employer defendant under 42 U.S.C. 1981. Defendants contend that, without this express authority, plaintiff fails to state an actionable claim against individual defendants. Plaintiff argues that she has stated a valid Section 1981 claim against individual defendants. She relies on other circuits as well as a Ninth Circuit district court decision allowing for such claims.

The Ninth Circuit has not directly addressed the issue of whether an employee may bring a Section 1981 discrimination claim against individual supervisory employees. The issue has been addressed by other circuits. The vast majority (if not all) of other circuits sustain such claims.

3

In *Tillman v. Wheaton-Haven Recreation Association*, 517 F.2d 1141 (4th Cir. 1975), black applicants challenged a non-profit swimming pool association's discriminatory membership policies. The plaintiffs also sued the directors of the non-profit association under Section 1981 claiming that these individuals had established and enforced the discriminatory policies. When the directors challenged their individual liability for these acts, the Fourth Circuit held that "directors become personally liable when they intentionally cause a corporation to infringe the rights secured by § 1981." *Tillman*, 517 F.2d at 1146.

Similarly, in *Al-Khazraji v. Saint Francis College*, 784 F.2d 505 (3d Cir. 1986), a professor sued the defendant college and individuals of the tenure committee for discrimination on the basis of race and national origin. In reversing the decision of the district court, the Third Circuit, citing *Tillman*, found that "employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by 42 U.S.C. 1981, regardless of whether the corporation may also be held liable." *Al-Khazraji*, 784 F.2d at 518. The decision went on to define the level of involvement necessary to state a claim against an individual:

> If individuals are personally involved in the discrimination against the [plaintiff], and if they intentionally caused the College to infringe on [plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct, they may be held liable.

*Ibid.* (citations omitted). The United States District Court for the District of Oregon followed *Al-Khazraji* in acknowledging personal liability for one who "intentionally infringes on an individual's rights protected under § 1981." *El-Hakem v. BJY Inc., et al.*, 262 F. Supp. 2d 1139, 1147 (D. Or. 2003).

In *Sullivan v. Little Huntington Park, Inc.*, 396 U.S. 229 (1969), the Supreme Court addressed the question of whether third parties could be sued under a similar statute, 42 U.S.C. 1982. In *Sullivan*, the plaintiffs brought discrimination actions asserting an interference with their equal right to lease. In determining that there was an action against third parties under 42 U.S.C. 1982, the Court found that, "A narrow construction of the language of § 1982 would be quite inconsistent with the broad and sweeping nature of the protection meant to be afforded

4

by § 1 of the Civil Rights Act of 1866 . . . from which § 1982 was derived." *Sullivan*, 396 U.S. at 237. Both Sections 1981 and 1982 derived from the Civil Rights Act of 1866. *See Faraca v. Clements*, 506 F.2d 956 (5th Cir. 1975) (applying the Supreme Court's rationale in *Sullivan* to recognize individual liability in 42 U.S.C. 1981 cases).

This order will follow the clear weight of authority in recognizing individual liability under Section 1981. No good reason to deviate has been advanced.[*]

### B.     Sufficiency in Stating a 42 U.S.C. 1981 Discrimination Claim.

In the alternative, defendants argue that plaintiff's only allegations against individual defendants are "conclusory allegations of law and unwarranted inferences" insufficient to defeat their motion. Plaintiff disagrees, arguing that she has complied with the liberal Rule 8(a) standards.

Federal law prohibits certain types of discrimination in employment. 42 U.S.C. 1981. It further provides a claim to those who are exposed to discrimination in employment. In order to state a claim under 42 U.S.C. 1981, a plaintiff must show intentional or purposeful discrimination based on race in the workplace. *General Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 387–91 (1982). "In order to withstand a motion to dismiss for failure to state a claim, a § 1981 cause of action need only allege 'that plaintiff suffered discrimination . . . on the basis of race.'" *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1487 (9th Cir. 1995) (quoting *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 625 (9th Cir. 1988)).

Plaintiff alleges that "individual Defendants subjected Plaintiff to racial and national origin discrimination and retaliation" (Compl. ¶ 60). Further, plaintiff alleges that "[p]laintiff is informed and believes, and thereon alleges, that each individually named Defendant was actively involved and affirmatively participated in Plaintiff's constructive discharge" (*ibid*.).

---

[*] The Second, Sixth, and Tenth Circuits have also recognized that individuals may be held liable under 42 U.S.C. 1981. *See Whidbee v. Gharzarelli Food Specialties, Inc.,* 233 F.3d 62, 75 (2d Cir. 2000); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991); *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986). Additionally, some Northern District of California courts, in various unpublished opinions, have already adopted this stance. *See, e.g., Simpson v. Martin, Ryan, Andrada and Lifter*, 1997 U.S. Dist. LEXIS 23342 (N.D. Cal. Aug. 26, 1997); *Flanagan v. Laidlaw Transit*, 1997 U.S. Dist. LEXIS 1066, 16-17 (N.D. Cal. Jan. 27 1997). No contravening authority was found.

5

Plaintiff's claim meets the minimum pleading standards for a Section 1981 claim. *First*, plaintiff alleges that she has suffered "racial and national origin discrimination and retaliation." This alone satisfies the requirements set forth for Section 1981 claims in *Parks School*. 51 F.3d at 1487. *Second*, a Section 1981 claim against individual defendants must show or, at this stage, must allege in the pleadings their personal involvement in the discrimination. *See Al-Khazraji*, 784 F.2d at 518. Plaintiff meets this requirement by stating that individual defendants were "actively involved and affirmatively participated in Plaintiff's constructive discharge." Despite defendants' arguments, the Ninth Circuit recognizes short and plain statements, like the one at issue here, as "sufficient to survive a motion to dismiss for failure to state a claim." *See Parks School*, 51 F.3d at 1487. As such, defendants' motion to dismiss the eighth claim as to individual defendants is **DENIED**.

### 2. NINTH AND TENTH CLAIMS AS TO ALL DEFENDANTS.

Defendants move to dismiss plaintiff's ninth and tenth claims, asserted against both Mills and individual defendants. This order analyzes both claims together because of their similarities and addresses defendants' challenges separately as to Mills and individual defendants.

#### A. Plaintiff's *Tameny* Claims' Underlying "Public Policy" as to Mills.

Plaintiff's ninth and tenth claims assert "wrongful constructive discharge" and "wrongful demotion," respectively, claims against Mills "in violation of California's public policy forbidding unlawful discrimination and retaliation" (Compl. ¶¶ 62, 65). Plaintiff describes these as *Tameny* claims. In *Tameny v. Atlantic Richfield*, 27 Cal. 3d 167 (Cal. 1980), the Supreme Court of California established the common-law tort of wrongful discharge in violation of public policy.

##### (1) *California's Public Policy Forbidding Unlawful Discrimination And Retaliation*.

Mills argues that, because plaintiff cites broadly to "California's public policy" without citing a specific statute or constitutional provision, Mills did not have satisfactory notice that any of its alleged practices were in violation of public policy. For this reason, Mills contends

6

that plaintiff's claim fails as a matter of law. Plaintiff argues that her FEHA-based *Tameny* claims against Mills are adequately supported by statutes cited in the complaint in light of the liberal pleading requirements of FRCP 8(a).

In *Tameny*, an employer discharged an employee because of the employee's refusal to participate in an illegal price-fixing scheme. The lower court sustained the employer defendant's demurrer finding no cause of action for discharging the at-will employee. In reversing, the Supreme Court of California held that, "[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." *Tameny*, 27 Cal. 3d at 170. The decision categorized this common-law tort as one of "wrongful discharge" of an employee that "contravenes public policy." *Id.* at 177–78.

Later, in *Stevenson v. Superior Court*, 16 Cal. 4th 880 (Cal. 1997), the Supreme Court of California articulated a four-part test for determining whether a particular public policy could support a wrongful-discharge claim. The policy had to be:

> (1) delineated in either constitutional or statutory provisions;
> (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental.

*Id.* at 894. The purpose of requiring that the underlying public policy be "substantial and fundamental" is "to ensure that employers have adequate notice of the conduct that will subject them to tort liability." *Id.* at 889.

In *Stevenson*, the specific issue was whether the plaintiff could maintain a cause of action for wrongful discharge in violation of the public policy against age discrimination under FEHA. In determining whether this type of discrimination was "substantial and fundamental," the decision compared FEHA's prohibition on age discrimination in the workplace to FEHA's prohibition of race and sex discrimination, classifying the latter two public-policy prohibitions as "unquestionably substantial and fundamental." In all, the decision held that FEHA's policy against age discrimination was "public," "well established," and "substantial and fundamental" in a similar way to FEHA's policies against race and sex discrimination. *Id.* at 895–96.

7

In *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238 (Cal. 1994), an employee alleged wrongful discharge in violation of public policy against his employer. In the complaint, the employee referred to some violations of unspecified federal "Alcohol, Firearms, and Tobacco laws" as a basis for his *Tameny* claim. *Id.* at 1257. The Supreme Court of California reversed and directed summary judgment for the employer, in part because of the plaintiff's "failure to identify a statutory or constitutional policy that would be thwarted by his alleged discharge." *Ibid.* While the court was willing to look at the plaintiff's entire complaint for any statutory language to support the employer's alleged public policy violations, the court would not accept vague, un-cited laws as adequate prior notice to the employer. *Id.* at 1256–57.

In this case, Mills argues that plaintiff's "vague" references to "violation[s] of California's public policy forbidding unlawful discrimination and retaliation" in the ninth and tenth claims do not specifically state any statutes or constitutional provisions that delineate a particular public policy, as required by *Turner*.

Despite defendant's contentions, FEHA's prohibitions against race and sex discrimination are neither vague nor are they omitted from plaintiff's complaint. In looking at the allegations and claims incorporated into plaintiff's ninth and tenth claims, this order finds that plaintiff's claims meet the *Stevenson* test, delineated above. 16 Cal. 4th at 894. Mills had notice that its alleged behavior was contrary to public policy.

As noted, the decision in *Turner* looked at the plaintiff's complaint to see if he had sufficiently alleged any statute that would support his wrongful discharge claim. Consistent with *Turner*, plaintiff does cite to FEHA (Cal. Gov. Code § 12940) and Title VII earlier in her complaint and "incorporates by reference" those statutes into the ninth and tenth claims. *Stevenson* found that FEHA's prohibitions against race and sex discrimination constituted a statutory basis for a wrongful discharge claim. Thus, alleging a FEHA violation on the basis of one of those discriminatory activities was enough to satisfy the first prong of the test for determining whether a particular public policy could support a wrongful-discharge claim. 16 Cal. 4th at 894–96. Plaintiff, therefore, meets the first prong of the *Stevenson* test by incorporating the FEHA and Title VII race and sex discrimination claims and by alleging

8

wrongful discharge claims "in violation of California's public policy forbidding unlawful discrimination and retaliation."

Plaintiff meets all of the remaining prongs of the *Stevenson* test as well. As noted above, it is firmly established that FEHA's prohibition of discrimination on the basis of race and sex have been deemed "public," "well established" and "substantial and fundamental" under the *Stevenson* test's second, third and fourth prongs. *See id.* at 895 (finding "the policies against race and sex discrimination" to be "policies that are unquestionably substantial and fundamental"). It should be no surprise to Mills that such race and sex discrimination is contrary to California and federal law. As such, Mills was on notice that its alleged actions would be policy violations supporting a wrongful-discharge claim.

For the foregoing reasons, defendant's motion to dismiss the FEHA-based *Tameny* claims of the ninth and tenth claims as to Mills is **DENIED**.

### *(2)   Violations of Safety Standards and Regulations And the Clery Act*.

Plaintiff's complaint included another basis for her wrongful discharge claim against Mills (Compl. ¶¶ 63, 66). Specifically, plaintiff alleged that defendants retaliated against her for her "vocal reporting of the College's violations of safety standards and regulations and of the Campus [Clery] Act" (Compl. ¶¶ 63, 66). In her recitation of the facts, plaintiff cites, among other allegations, that "criticism of [Mills'] frequent violations of health and safety standards, such as locked fire doors and substandard fire safety systems," may have led to her firing in "retaliation for such advocacy." (Compl. ¶ 31). Defendants argue that plaintiff's references to these alleged violations of "safety standards and regulations" are unsupported by statute. They also assert that the plaintiff's allegations of Clery Act violations are vague and do not explain how Mills failed to comply with the Act. In all, they contend that Mills did not have adequate notice that its alleged actions were in violation of public policy.

Plaintiff argues that these *Tameny* claims against Mills are adequately supported public policy delineated in the complaint. In the alternative, plaintiff requests leave to amend her complaint to cite specific relevant law establishing a public policy with regards to the alleged

9

health and safety violations (Opp. 21).  Defendant is amenable to plaintiff's request (Reply Br. 21).

This order finds that plaintiff's non-FEHA based *Tameny* claims omit the specific statutory basis required to establish public-policy violations.  As such, Mills was without notice that its alleged actions would give rise to a *Tameny* claim.  This order holds that amendment is appropriate at this juncture.  Plaintiff will be permitted to amend her complaint to allege specific and well-established statutory protections delineated in California state or federal law with regards to public policies promoting occupational health and safety that would support a *Tameny* claim.  For the foregoing reasons, defendant's motion to dismiss the non-FEHA based *Tameny* claims of the ninth and tenth claims as to Mills is **GRANTED WITH LEAVE TO AMEND**.

### B. Plaintiff's Tameny Claim on the Basis of Clery Act Violations As to Individual Defendants.

Plaintiff's ninth and tenth claims also assert "wrongful constructive discharge" and "wrongful demotion," respectively, claims against individual defendants "in retaliation for Plaintiff's vocal reporting of the College's violations of safety standards and regulations of the Campus [Clery] Act."  Plaintiff alleges that defendants deprived her of a "right to be free from adverse action in the employment context" and "wrongful demotion" (Compl. ¶¶ 63, 66).  Plaintiff describes these claims against individual defendants as non-FEHA based *Tameny* claims.

Individual defendants contend that, as a matter of law, only an employer could be found liable under plaintiff's alleged *Tameny* claims for "wrongful constructive discharge" and "wrongful demotion."  They argue that plaintiff's claims cannot be maintained against individual defendants because they were not plaintiff's employer.  Plaintiff argues that, because she asserts non-FEHA based *Tameny* claims, she may assert those claims against individual defendants.  Plaintiff disputes the notion that her claim is barred because she argues that neither the Ninth Circuit nor the California courts have ruled on this particular issue.

Under California law, it is well established that, "As a matter of law, only an employer can be liable for the tort of wrongful discharge in violation of public policy." *Khajavi v.*

10

*Feather River Anesthesia Medical Group*, 84 Cal. App. 4th 32, 53 (Cal. Ct. App. 2000). The very basis of a *Tameny* claim is a wrongful *discharge* by an *employer*.

In *Weinbaum v. Goldfaub, Whitman & Cohen*, 46 Cal. App. 4th 1310, 1315 (Cal. Ct. App. 1996), the Court of Appeal of California addressed the question of whether a third-party defendant, not the plaintiff's employer, could be liable for conspiracy to wrongfully terminate the plaintiff's employment in violation of public policy. In ruling that the third-party could not be liable to the plaintiff for wrongful discharge, the court summarized its position as follows:

> [T]he duty on which the tort is based is a creature of the employer-employee relationship, and the breach of that duty is the employer's improper discharge of an employee otherwise terminable at the will or whim of the employer. There is nothing . . . we have found to suggest that this tort imposes a duty of any kind on anyone other than the employer. Certainly, there is no law we know of to support the notion that anyone other than the employer can discharge an employee.

46 Cal. App. 4th at 1315.

In *Jacobs v. Universal Development Corp.*, 53 Cal. App. 4th 692 (Cal. Ct. App. 1997), the plaintiff sued both his employer and two supervisors for wrongful discharge. The plaintiff alleged that he was fired for refusing to participate in a rebate program that violated federal lending laws. The Court of Appeal of California cited *Weinbaum* in dismissing the action against the defendant supervisors, holding that only an employer could be liable for tortious wrongful discharge. *Jacobs*, 53 Cal. App. 4th at 704.

Similarly, in *Phillips v. Gemini Moving Specialists*, 63 Cal. App. 4th 563 (Cal. Ct. App. 1998), the plaintiff alleged that certain funds were improperly taken out of his pay check and that he was improperly fired after complaining about this action. The Court of Appeal of California reversed the trial court's dismissal of the plaintiff's *Tameny* claim against his employer. The decision held that the claim was in fact based on an established public policy with regards to prompt payment of wages, which was delineated in the California Labor Code. However, the decision upheld the dismissal of the plaintiff's claims against his paymaster/supervisor, finding that individuals could not be liable for the tort of wrongful discharge. *Id.* at 576.

11

1    Plaintiff contends that these decisions are distinguishable. Plaintiff stresses that neither
2 the Ninth Circuit nor the California courts have definitively ruled on the issue of whether a
3 non-FEHA based *Tameny* claim may be maintained against an individual supervisor. As such,
4 plaintiff argues that there is no case law barring her ninth and tenth claims as to individual
5 defendants.

6    This order disagrees. *First*, *Jacobs* and *Phillips* expressly deal with non-FEHA based
7 *Tameny* claims against individuals. In both decisions, the Court of Appeal of California
8 unequivocally holds that mere supervisors cannot be held liable for non-FEHA based *Tameny*
9 claims. *Jacobs*, 53 Cal. App. 4th at 704; *Phillips*, 63 Cal. App. 4th at 576. *Second*, a tortious
10 wrongful-discharge claim is inherently based on an "*employer-employee* relationship" and "a
11 basic duty imposed by law upon all *employers*." *Weinbaum*, 46 Cal. App. 4th at 1315; *Tameny*,
12 27 Cal. 3d at 178 (emphasis added). *Tameny* only created "a tort action for wrongful discharge
13 against the *employer*." 27 Cal. 3d at 178. Plaintiff does not acknowledge *Jacobs* or *Phillips*
14 and fails to cite any decision extending the *Tameny* ruling to reach mere supervisory employees.
15 For the foregoing reasons, defendants' motion to dismiss the ninth and tenth claims as to
16 individual defendants is **GRANTED WITHOUT LEAVE TO AMEND**.

17                                         **CONCLUSION**

18    For the foregoing reasons, defendants' motion to dismiss is **GRANTED IN PART** and
19 **DENIED IN PART**. Defendants' motion to dismiss the eighth claim as to individual defendants is
20 **DENIED**. Defendants' motion to dismiss the FEHA-based *Tameny* claims of the ninth and tenth
21 claims as to Mills is **DENIED**. Defendants' motion to dismiss the non-FEHA based *Tameny*
22 claims of the ninth and tenth claims as to Mills is **GRANTED WITH LEAVE TO AMEND**.
23 Defendants motion to dismiss the ninth and tenth claims as to individual defendants is
24 **GRANTED WITHOUT LEAVE TO AMEND**.

25    **IT IS SO ORDERED.**
26 Dated: February 5, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE